```
                    UNITED STATES  DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

| | |
|---|---|
| **INTERNATIONAL TRANSPORT WORKERS FEDERATION** | **CIVIL ACTION** |
| | **NO. 12-2503** |
| **VERSUS** | |
| **MI-DAS LINE, SA ET AL.** | **SECTION B(4)** |

ORDER

Before the Court are Plaintiff International Transport Workers Federation's ("ITF") Motion to Remand to State Court[1] and supporting memoranda, and Defendants Mi-Das Line, SA and Doun Kisen KK's ("Defendants") Opposition to the motion and memoranda in support of the opposition. (Rec. Docs. No. 7, 7-1, 10, 12, 13, & 17). Accordingly, and for the reasons articulated below,

**IT IS ORDERED** that the motion is **GRANTED** and the above-captioned matter is **REMANDED** to state court.

Procedural History and Facts of the Case:

ITF is a labor federation comprised of affiliated trade unions organized and domiciled in the United Kingdom. (Rec. Doc. No. 1-1). Defendants are Japanese companies which own and manage the vessel the M/V BRIGHT LAKER, flying the flag of Panama. (Rec. Docs. No. 1-1 & 10 at 7). ITF filed suit in Civil District Court

---

[1] The Court notes that also pending are the Defendants' Motions to Vacate Attachment; to Vacate Discovery Order and Quash Discovery (ordered by the State Court prior to removal); and to Dimiss Based on *forum non conveniens*. (Rec. Docs. No. 3, 5, & 18). The Court first addresses ITF's Motion to Remand, as it raises the of issue subject matter jurisdiction.

for the Parish of Orleans, State of Louisiana ("State Court") on October 8, 2012, alleging that Defendants breached a Collective Bargaining Agreement ("CBA") between ITF and Defendants, which is applicable to the M/V BRIGHT LAKER.  (Rec. Docs. No. 10 & 1-1). ITF asserts that under the terms of the CBA, Defendants agreed to pay union rates of pay to Burmese seafarers employed on the M/V BRIGHT LAKER. (Rec. Doc. No. 1-1 at 1).  ITF claims that despite this agreement, Defendants engaged in a practice of "double bookkeeping" by which Burmese seafarers aboard the M/V BRIGHT LAKER were required to execute receipts indicating they were paid the wages dictated by the CBA, but in actuality were being paid far less.  (Rec. Docs. No. 1-1 and 7-1 at 2).  ITF seeks specific performance, punitive damages and attorney's fees for breach of contract, fraud, and unfair trade practices under Louisiana law. (Rec. Docs. No. 1-1 and 7-1 at 6). Both parties agree that all the interests involved in the matter are foreign: ITF is based in London, Defendants are Japanese corporations based in Japan, the Burmese seamen whose rights ITF seeks to protect are all citizens and residents of Myanmar and members of the All Japan Seaman's Union, and the M/V BRIGHT LAKER flies the flag of Panama.  (Rec. Docs. No. 7-1 & 10).

    Defendants  removed the matter to this Court on October 15,

2012, and ITF filed the instant motion to remand the same day.[2] (Rec. Docs. No. 1 & 7).

Law and Analysis:

A. Savings to Suitors Clause under 28 U.S.C. § 1333(1)

"The district courts shall have original jurisdiction, exclusive of the courts of the States of: (1) Any civil case of admiralty or maritime jurisdiction, <u>saving to suitors in all cases all other remedies to which they are otherwise entitled.</u>"  28 U.S.C. § 1333(1) ("§ 1331(1)")(emphasis added).  This final clause of § 1331(1) is called the "Savings to Suitors Clause," and it permits "admiralty and maritime actions, otherwise exclusively within the jurisdiction of the federal district courts, to be brought in state courts as well." *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1542 (5th Cir. 1991).  Therefore, under § 1333(1), "a plaintiff may elect to bring admiralty and maritime claims in state rather than federal court.  These [claims] 'cannot be removed in the absence of diversity' unless 'there exists some basis for jurisdiction other than admiralty.'" *In re Eckstein Marine Service,*

---

[2] Prior to removal to this Court, the State Court issued a Writ of Attachment, allowing the Orleans Parish Sheriff to arrest the M/V BRIGHT LAKER and granted ITF's Motion for Immediate Discovery for depositions of the Captain and crew members aboard the M/V BRIGHT LAKER.  (Rec. Doc. No. 1-1 at 6, 10).  Given the urgency of the M/V BRIGHT LAKER being physically arrested by the Orleans Parish Sheriff, the Court held a telephone status conference with counsel for all parties on October 17, 2012. (Rec. Doc. No. 11).  The Court was subsequently informed that the Defendants posted security and the M/V BRIGHT LAKER was no longer physically arrested.  (See Rec. Doc. No. 20).

*L.L.C.*, 672 F.3d 310, 315-16 (5th Cir. 2012) (finding that "the district court's admiralty jurisdiction could not, in and of itself, give the district court subject matter jurisdiction over any part of the litigation.").

Here, Defendants concede that the parties are all aliens and do not assert diversity jurisdiction. (Rec. Doc. No. 10 at 5). Further, both parties agree that the dispute arises out of admiralty maritime law. (Rec. Docs. No. 7-1 & 10). This is similar to the facts in *Eckstein*, where the Fifth Circuit affirmed the district court's dismissal of an action for lack of subject matter jurisdiction. *Eckstein*, 672 F.3d at 313, 315. In *Eckstein*, the plaintiff was a crew member of a vessel owned and operated by defendants, who was injured while on board the vessel. *Id*. at 313-14. The plaintiff in *Eckstein* sought relief in Texas state court, and defendants field an action for limitation of liability in federal district court. *Id*. at 314. The plaintiff filed a motion to dismiss defendants action in federal court, asserting that it was untimely.[3]  *Id*. at 314-15. The district court granted the motion to dismiss, citing a lack of subject matter jurisdiction. *Id*. at 315. On appeal, the Fifth Circuit agreed, noting that the

---

[3]The defendants in *Eckstein* sought to come to federal district court under the Limitation of Shipowner's Liability Act, which required that the shipowner (the defendants in *Eckstein*) "bring a civil action in a district court ... within 6 months after a claimant written notice of a claim."  *Eckstein*, 672 F.3d at 314, citing 46 U.S.C. 30501 *et seq*.  Defendants in *Eckstein* filed their action more than eight and half months later.

federal court's "original jurisdiction" over admiralty claims under § 1331(1) was not enough to grant the district court subject matter jurisdiction over any part of the litigation, in the absence of diversity jurisdiction or some other basis for subject matter jurisdiction. *Id*. at 315-16, citing 28 U.S.C. § 1331(1); *see also Baris*, 932 F.2d at 1543. Though the limitation of liability statute would have been a satisfactory "other basis" to grant the federal court subject matter jurisdiction, defendants failed to timely invoke it. *Eckstein*, 672 F.3d at 316. Therefore, when defendants relied solely on § 1331(1), the plaintiff in *Eckstein* was within his rights to choose to "file his complaint in state court." *Id*.

In the present matter, ITF admits that "[t]his is a case of admiralty jurisdiction," but goes on to invoke the Savings to Suitors Clause to bring the action in State Court. (Rec. Doc. No. 1-1), citing 28 U.S.C. § 1331(1). Defendants make no argument to dispute ITF's invocation of the Savings to Suitors Clause. (*See* Rec. Docs. No. 10, 12, & 17). Further, ITF cites the agreement between ITF and Defendants, which requires "[compliance] with minimum standards of employment in accordance with ITF policy" as the basis for their breach of contract claims under state law.[4]

---

[4]The Court further notes that despite Defendants' assertion that "ITF's action alleges claims arising under the 'Constitution, treaties or laws of the United States'," no such language is contained in ITF's complaint filed in State Court. (Rec. Docs. No. 10 at 7 & 1-1).

(Rec. Docs. No. 13 & 13-1 at 1). Therefore, under the Fifth Circuit's reasoning in *Eckstein*, ITF has the right to pursue state law remedies in State Court, regardless of original admiralty jurisdiction under § 1331(1), unless independent federal subject matter jurisdiction exists based on diversity or some other basis. Defendants concede that there is no federal subject matter jurisdiction based on diversity, but instead argue that this Court has subject matter jurisdiction under other federal statutes: the Seaman's Wage Statute and the Labor Management Relations Act of 1947. (Rec. Doc. No. 10).

B.  Seaman's Wage Statute, 46 U.S.C. § 10313

Under the Seaman's Wage Statute ("Statute"), seamen are entitled to "'one-half of the balance of wages earned and unpaid at each port at which the vessel loads or delivers cargo during the voyage' and to the balance of wages due the seaman at the end of a voyage." *Kaluom v. Stolt Offshore, Inc.*, 504 F.3d 511, 516 (5th Cir. 2007), citing 46 U.S.C. § 10313. The Statute also has a provision that imposes a penalty of two days' wages on masters or owners for each day payment is delayed. *Id*. The Fifth Circuit has held that the Statute applies to foreign seaman on foreign vessels when in a harbor of the United States, provided that the vessel was on either a foreign or intercoastal voyage. *Id*. at 517, 522-23; 46 U.S.C. § 10313.

However, the Supreme Court has made clear that the right to

invoke penalties under the Statute is "held by individual seamen and <u>is not imputed to their union representatives</u>." *Mateo v. M/S KISO, et al.*, 805 F.Supp 761, 778 (N.D. Ca. 1991)(emphasis added), citing *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 357-58 (1971), citing former section 596, the predecessor to 46 U.S.C. § 10313.[5] Here, ITF makes clear that they bring the instant action as a federation of "affiliated trade unions." (Rec. Doc. No. 1-1 at 1). Therefore, even assuming that the requirements for foreign or intercoastal voyage as dictated in *Kaluom* are met, ITF's complaint cannot be construed as a complaint under the Statute, because the Supreme Court has made clear that it is a right held by individual seamen, not labor unions acting on their behalf. *U.S. Bulk Carriers, Inc.,* 400 U.S. at 357-58; *Mateo,* 805 F.Supp at 778. Accordingly, Defendants attempt to invoke federal subject matter jurisdiction under the Seaman's Wage Statute must fail.

C. Labor Management Relations Act of 1947, 29 U.S.C. § 185(a)

The Labor Management Relations Act of 1947 ("LMRA") generally governs suits by and against labor organizations. 29 U.S.C. § 185 The Supreme Court has held that the LMRA is not intended "to

---

[5] Further, the remedies available under the Statute are not exclusive; plaintiffs may elect to pursue wage claims through contractual grievance remedies or collective bargaining agreement remedies. See *U.S. Bulk Carriers, Inc.,* 400 U.S. at 356; *Mateo,* 805 F.Supp at 778-79. Therefore, even if the Court were to assume that ITF's complaint falls under the Statute, there is no authority barring concurrent jurisdiction of the breach of contract claims in State Court.

resolve labor disputes between nationals of other countries operating ships under foreign laws.  The whole background of the [LMRA] is concerned with industrial strife between American employers and employees." *Benz v. Compania Naviera Hidalgo, S.A.*, 353 U.S. 138, 143-44 (1957).  There is a narrow exception to the general inapplicability of American laws such as LMRA to wholly foreign disputes, when "the interests of the United States or its citizens, rather than the interests internal to the ship, are at stake." *Spector v. Norwegian Cruise Line, Ltd.*, 545 U.S. 119, 130 (2005).  In *Spector*, the Supreme Court held that this narrow exception applied, when the foreign cruise ships at issue provided "transportation services to over 7 million United States residents annually." *Spector*, 545 U.S. at 132.

While Defendants concede that the "*Benz* rule would appear to apply to the instant suit," they argue that the suit has "some affect on American citizens" by virtue of the fact that the ITF federation of labor unions also includes member unions in the United States.[6]  (Rec. Doc. No. 10 at 14).  Defendants do not contend that the actual rights of American seamen are represented by the ITF in this particular suit.  Rather, the instant matter involves interests internal to the ship, allegations that foreign seamen on a foreign-flagged vessel were underpaid under the terms

---

[6]Specifically, Defendants cite that the Seamen's International Union and the North American Mariner's Union as two United States unions which are members of the ITF.

of a CBA entered into between a foreign labor federation and foreign corporations. (Rec. Docs. No. 7-1 & 10). Therefore, this Court finds that the mere fact that the ITF membership includes some American labor unions, when the rights of members of those unions are not directly implicated, too attenuated to trigger the type of exception articulated by the Supreme Court in *Spector*. Accordingly, the LMRA cannot serve as an independent basis for federal subject matter jurisdiction in a dispute between a foreign federation of labor unions and foreign corporations, over the workings of foreign crewmembers on foreign-flagged vessels. (Rec. Doc. No. 10 at 15).

New Orleans, Louisiana, this 2nd day of November, 2012.

_____
UNITED STATES DISTRICT JUDGE